# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Marco Doda, DODA USA, Inc., and DODA COSTRUZIONE MACCHINE AGRICOLE, di Doda Aldo e C. snc,

Plaintiffs,

vs.

Waste Management, Inc., WM Intellectual Property Holdings, LLC, Waste Management National Services, Inc., and James L. Denson, Jr.

Defendants.

Case No.  17-CV-00604-GMS



**PUBLIC - REDACTED VERSION**

---

## PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

MORRIS JAMES LLP
Brett D. Fallon (DE Bar No. 2480)
Mary B. Matterer (DE Bar No. 2696)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801-1494
Telephone:  (302) 888-6800
*bfallon@morrisjames.com*
*mmatterer@morrisjames.com*

FAFINSKI MARK & JOHNSON, P.A.
Donald Chance Mark, Jr. (Minn. Bar #67659)
Patrick J. Rooney (Minn. Bar #198274)
Tyler P. Brimmer (Minn. Bar #0392700)
Flagship Corporate Center
775 Prairie Center Drive, Suite 400
Eden Prairie, MN  55344
Telephone:  (952) 995-9500
*donald.mark@fmjlaw.com*
*patrick.rooney@fmjlaw.com*
*tyler.brimmer@fmjlaw.com*

***Attorneys for Plaintiffs Marco Doda,
DODA USA, Inc., and
DODA Costruzione Macchine
Agricole, di Doda Aldo e C. snc***

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... ii

I.    STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS ........................... 1

II.   SUMMARY OF ARGUMENT ....................................................................... 2

III.  STATEMENT OF FACTS ............................................................................ 3

IV.   ARGUMENT ............................................................................................ 6

      A.   Defendants' Motion to Dismiss WMI and WMNS from Count I Pursuant to
           Rule 12(b)(6) Should be Denied ..................................................... 6

           1.  Legal Standard for a Motion to Dismiss under Rule 12(b)(6) ......................... 6

           2.  The Allegations in the FAC are Clearly Sufficient to Meet the Pleading
               Requirements to Assert a § 256 Claim against Both WMI and WMNS .......... 6

      B.   Defendants' Motion to Dismiss Counts IV and V Pursuant to Rule 12(b)(1)
           or, in the Alternative, 12(b)(6), Should be Denied ................................ 11

           1.  Legal Standard for a Motion to Dismiss under Rule 12(b)(1) ....................... 11

           2.  A Real Controversy Exists between the Parties Sufficient to Establish
               Jurisdiction for Purposes of the Declaratory Judgment Act ...................... 12

           3.  Count IV of Plaintiffs' FAC Satisfies Fed. R. Civ. P. 8(a)(2) and States a
               Valid Claim for Relief .................................................................. 14

      C.   The Parties Have Stipulated that Defendants' Motion to Dismiss Counts I
           and V with Respect to the Pending Child Application Should Be Dismissed
           without Prejudice or Costs ............................................................ 17

V.    CONCLUSION .......................................................................................... 17

# TABLE OF AUTHORITIES

**Case**                                                                                          **Page(s)**

*Apotex Inc. v. Cephalon, Inc.*
    2011 U.S. Dist. LEXIS 125859 (E.D. Pa. 2011) .............................................................14

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)......................................................................................................6, 14

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)..............................................................................................6, 14, 16

*BP Chems. Ltd. v. Union Carbide Corp.*
    4 F.3d 975 (Fed. Cir. 1993) ................................................................................................11

*Brinkmeier v. Graco Children's Prods. Inc.*
    767 F. Supp. 2d 488 (D. Del. 2011)....................................................................................6

*Chou v. University of Chicago*
    254 F.3d 1347 (Fed. Cir. 2001)..............................................................................7, 8, 10

*EMC Corp. v. Norand Corp.*
    89 F.3d 807 (Fed. Cir. 2004)...............................................................................................11

*EMC Corp. v. Zerto, Inc.*
    C.A. No. 12-956-GMS, 2014 WL 3809365 (D. Del. July 31, 2014),
    550 U.S. 544 (2007)..........................................................................................................14

*Fina Oil & Chemical Co. v. Ewen*
    123 F.3d 1466 (Fed. Cir. 1997).............................................................................................7

*Gen-Probe, Inc. v. Vysis, Inc.*
    359 F.3d 1376 (Fed. Cir. 2004).............................................................................................11

*Hook v. Hook & Ackerman, Inc.*
    187 F.2d 52 (3d Cir. 1951).....................................................................................................8

*Idenix Pharms. v. Gilead Scis., Inc.*
    C.A. No. 11-1987-LPS, 2014 WL 4222902 (D. Del. Aug. 25, 2014) ..........................3, 14

*Jardin v. Datallegro, Inc.*
    No. 10-CV-2552-IEG (WVG), 2011 U.S. Dist. LEXIS 84509, 2011 WL 3300152 (S.D.
    Cal. July 29, 2011)......................................................................................................9, 10

*MacMillan v. Moffett*
    432 F.2d 1237, 58 C.C.P.A. 792 (C.C.P.A. 1970)............................................................14

*MCV Inc. v. King-Seeley Thermos Co.*
    870 F.2d 1568 (Fed. Cir. 1989)............................................................................8

*MedImmune, Inc. v. Genentech, Inc.*
    549 U.S. 118 (2007)............................................................................3, 11, 14

*Micron Tech., Inc. v. Mosaid Tech., Inc.*
    518 F.3d 897, 2008 U.S. App. LEXIS 4387, 2008 WL 540182
    (Fed. Cir., Feb. 29, 2008)............................................................................11

*OddzOn Prods., Inc. v. Just Toys, Inc.*
    122 F.3d 1396 (Fed. Cir. 1997)............................................................................7

*Pannu v. Iolab Corp.*
    155 F.3d 1344 (Fed. Cir. 1998)............................................................................6

*Phillips v. Cnty. Of Allegheny*
    515 F.3d 224 (3d Cir. 2008)............................................................................6, 16

*Scheuer v. Rhodes*
    416 U.S. 232 (1974)............................................................................6

*Schwindt v. Hologic, Inc.*
    C.A. No. 11-110-JMS, 2011 U.S. Dist. LEXIS 84509, 2011 WL 3806511 (S.D. Ind.
    Aug. 26, 2011) ............................................................................10

*Shell Oil Co. v. Amoco Corp.*
    970 F.2d 885 (Fed. Cir. 1992)............................................................................11

*Trovan, Ltd. v. Sokymat, S.A.*
    299 F.3d 1292 (Fed. Cir. 2002)............................................................................7

*U.S. Water Servs., Inc. v. Novozymes A/S*
    843 F.3d 1345 (Fed. Cir. 2016)............................................................................14

*Wilkerson v. New Media Tech. Charter Sch. Inc.*
    522 F.3d 315 (3d Cir. 2008)............................................................................6

**Rules**                                                                          **Page(s)**

Fed. R. Civ. P. 8............................................................................2, 14, 16

Fed. R. Civ. P. 12............................................................................2, 3, 6, 11

**Statutes**                                                                                           **Page(s)**

28 U.S.C. § 2201.................................................................................................................11

35 U.S.C. § 102.................................................................................................................14

35 U.S.C. § 256.........................................................................................1, 2, 6, 7, 8, 9, 10, 11


**Publications**                                                                                       **Page(s)**

*Leahy-Smith America Invents Act* (Pub. L. No. 112-29, 125 Stat. 284 (2011)) ...........................14

I.    **STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS.**

Plaintiffs Marco Doda ("Marco Doda"), DODA USA, Inc. ("DODA USA"), and DODA Costruzione Macchine Agricole, di Doda Aldo e C. snc ("DODA Italy") (collectively, "Plaintiffs") initiated this action against Defendants Waste Management, Inc. ("WMI"), WM Intellectual Property Holdings, LLC ("WMIP"), James L. Denson Jr. ("Denson") and Waste Management National Services, Inc. ("WMNS") (collectively, "Waste Management" or "Defendants") on May 25, 2017.  (D.I. 2).  The dispute centers on a U.S. Patent No. 8,926,841 (the '841 Patent), and the application from which it issued, U.S. Patent Application No. 13/169,843 (the '843 Patent Application").

Plaintiffs filed their First Amended Complaint ("FAC") (D.I. 22) on July 31, 2017.  In it Plaintiffs assert four claims as follows:

Count I:  Plaintiffs seek correction of the inventorship designation on the '841 Patent, pursuant to 35 U.S.C § 256, and request an order adding Plaintiff Marco Doda as an inventor on, and owner of, the '841 Patent, as well as any applications and patents issuing therefrom.

Counts II and III:  Plaintiffs seek damages for Defendants' breach of two non-disclosure agreements entered into by the parties in 2010 and 2012.

Count IV:  Plaintiffs seek a declaration that the '841 Patent is invalid on grounds of derivation and on grounds that the inventor listed on the '843 Patent Application and the '841 Patent did not actually invent some or all of the inventions claimed in the '843 Patent Application and the '841 Patent.

Count V:  Plaintiffs seek a declaration that the '841 Patent, and any other patents or patent applications claiming priority to the '843 Patent Application, are unenforceable due to the inequitable conduct of the Defendants before the USPTO.

Defendants filed their motion to dismiss the FAC on August 14, 2017.  In their motion Defendants seek to have some (but not all) of the claims and parties dismissed.  Specifically, Defendants seek to have Claim I of the FAC dismissed against WMI and WMNS on grounds that they are not "concerned parties" under 35 U.S.C § 256, and Counts IV and V in their entirety under Fed. R. Civ. 12(b)(1) for lack of subject matter jurisdiction, or in the alternative, under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  For the reasons stated herein, these motions should be denied.[1]

## II.    SUMMARY OF ARGUMENT.

1.      Defendants' motion to dismiss Count I of the FAC against WMI and WWNS for failure to satisfy the pleading requirements of Fed. R. Civ. P. 8(a)(2) should be denied.  Congress intended 35 U.S.C. § 256 to be interpreted broadly as a "savings provision" pursuant to which all parties with *an economic stake* in a patent's validity—not just the current holder of the disputed patent—should be considered "concerned parties" subject to suit.  Here, the FAC alleges that WMI is the sole owner of the entity that currently owns the '841 Patent and, as such, stands to lose if inventorship and ownership of the '841 Patent is changed.  Similarly, the FAC alleges that WMNS derived, and continues to derive, substantial economic and non-economic benefits, including reputational benefits, from the '841 Patent.  Based on these factual allegations it clearly is "facially plausible" that both WMI and WMNS have an economic stake in the validity of the '841 Patent sufficient to make them both proper parties.

---

[1]  Defendants have also requested that Counts I and V be dismissed with respect to the pending child application, U.S. Patent App. No. 15/435,021  (the '021 application).  After conferring the parties have stipulated that Counts I and V may be dismissed without prejudice, with respect to the '021 Application. (D.I. 29).  The Parties have further stipulated that this dismissal is without an award of costs to either party, and without waiver by any party of any other argument, claim or defense relative to Counts I and V of the Amended Complaint, and specifically without any waiver by any party of any other argument, claim or defense relative to the inventorship, ownership, enforceability or validity of the '841 Patent or the '843 Application.  (*See infra* § IV C).

2.     Defendants' motion to dismiss Counts IV and V of the FAC pursuant to Rule 12(b)(1) or, in the alternative, 12(b)(6), should be denied.  The FAC alleges sufficient facts to show that the dispute between the parties with respect to the '841 Patent meets the Supreme Court's standard, as announced in *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118 (2007), for assertion of jurisdiction under the declaratory judgment act.  The allegations in the FAC are "definite and concrete, touching [on] the legal relations of parties having adverse legal interests and [are] … real and substantial and admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  In addition, the FAC provides clear notification that Plaintiffs' claim for invalidity is based on a derivation argument, and further includes additional and substantial detailed facts "to render the claims plausible."  *Idenix Pharms. v. Gilead Scis., Inc*., C.A. No. 11-1987-LPS, 2014 WL 4222902 at *7 (D. Del. Aug. 25, 2014).

## III.   STATEMENT OF FACTS.

Plaintiff DODA Italy, which was founded in 1985, is an engineering and systems development firm that specializes in, among other things, designing, manufacturing and implementing biological waste separator systems which separate organic waste for a variety of applications.  (D.I. 22, ¶ 13).  The '841 Patent and the '843 Patent Application at the center of this dispute are entitled "SYSTEM AND METHOD FOR CONVERTING ORGANIC WASTE INTO METHANE AND OTHER USEFUL PRODUCTS."  (D.I. 22, ¶ 55, 80).  The '843 Patent Application was filed on June 27, 2011 by Defendant Denson, an employee of WMNS.  (D.I. 22, ¶ 55).

In the '843 Application Denson stated that he was the "sole or first" inventor of the technology and process described therein, and made no mention of contributions made by any other person in terms of providing the inventions and intellectual property which formed the

basis of the proposed patent.  (D.I. 22, ¶ 55).  As such, Denson's Declaration in effect declared to the USPTO that he was the original, first and **sole** inventor of the subject matter claimed in the '843 Patent Application.  (D.I. 22, ¶ 55-56).

Denson's statement was a lie.  (D.I. 22, ¶ 61-62, 136-138).  In reality, the '843 Patent Application contained and incorporated confidential and proprietary information disclosed to Denson by Marco Doda, a principal of and chief engineer and inventor for DODA Italy and DODA USA.  (D.I. 22, ¶ 15, 136).  These disclosures took place in the context of business discussions between WMNS and DODA and started in November 2009, when representatives of WMNS and WMI, including Denson, traveled to Italy to meet in person with Marco Doda and other representatives of DODA.  (D.I. 22, ¶ 18-19).  During their visit, Denson visited and toured an operating food separation and bio gas plant designed by DODA and utilizing DODA equipment.  (D.I. 22, ¶ 19).  During the visit, the parties discussed the installation of the first DODA system into a Waste Management facility.  (D.I. 22, ¶ 19).

Following the visit to Italy, DODA and WMNS continued their business discussions in which WMNS proposed that DODA could become WMNS's exclusive supplier of waste separator systems equipment for its various facilities in the United States.  (D.I. 22, ¶ 18-20).  As part of those discussions, WMNS entered into two non-disclosure agreements with DODA, the first in 2010 and the second in 2012 (hereinafter, the "2010 NDA" and the "2012 NDA"). (D.I. 22, ¶ 32-40, 66-73).  Pursuant to the 2010 and 2012 NDAs, Marco Doda and DODA provided to WMNS information and a series of diagrams that set out in detail DODA's proprietary equipment and processes, and specifically diagramed DODA's organic waste processing system.  (D.I. 22, ¶ 52, 74).

Unfortunately, however, and unbeknownst to Marco Doda or DODA, during the pendency of these ongoing discussions, and despite the explicit language in the 2010 and 2012 NDAs, by mid-2011 Denson began secretly preparing the '843 Patent Application.  (D.I. 22, ¶ 54-76).  In that application Denson incorporated the designs, information, and processes which were developed by Marco Doda and DODA and which were provided to Denson and WMNS on a confidential basis.  (D.I. 22, ¶ 61-62).  In addition, the application included some of the very diagrams confidentially provided by DODA to Denson and WMNS.  (D.I. 22, ¶ 61).

The '841 Patent, which resulted from the '843 Patent Application, issued on January 6, 2015.  (D.I. 22, ¶ 80).  At least one of the claims in the '841 Patent—Claim 16—is derived directly from the information and diagrams provided by DODA and Marco Doda in 2009 through 2012.  (D.I. 22, ¶ 81-81).  DODA did not learn of the issuance of the '841 Patent, or the fact that WMNS and Denson even made a patent application which relied on its inventions and intellectual property, until July 2016.  (D.I. 22, ¶ 86).

Upon learning of the '841 Patent and examining its contents, DODA promptly sent a letter to WMNS demanding that WMNS amend the '841 Patent to include Marco Doda as a co-inventor.  (D.I. 22, ¶ 87).  Thereafter, the parties, through counsel, exchanged numerous letters, emails and documents in an attempt to resolve the issues between them with respect to the '841 Patent, and on February 9, 2017 entered into a tolling agreement in which they mutually agreed to toll their respective rights to assert claims related to, among other things, the '841 Patent and the non-disclosure agreements.  (D.I. 22, ¶ 88-93).  Ultimately, despite four (4) months of negotiations the parties were unsuccessful in their attempts to reach an agreement resolving the disputed inventorship and ownership of the '841 Patent. (D.I. 22, ¶ 93, 97).

IV.   **ARGUMENT.**

A.   **Defendants' Motion to Dismiss WMI and WMNS from Count 1 Pursuant to Rule 12(b)(6) Should be Denied.**

1.   **Legal Standard for a Motion to Dismiss under Rule 12(b)(6).**

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The issue is "not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The complaint must provide sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ultimately, the complaint must state enough facts to "raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Brinkmeier v. Graco Children's Prods. Inc.,* 767 F. Supp. 2d 488, 492 (D. Del. 2011) (citing *Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 321 (3d Cir. 2008)).

2.   **The Allegations in the FAC Are Clearly Sufficient to Meet the Pleading Requirements to Assert a § 256 Claim against Both WMI and WMNS.[2]**

The validity of a patent requires that the inventors be correctly named. *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349, (Fed. Cir. 1998). One cannot claim or reproduce the invention of

---

[2]   Defendants do not seek dismissal of Count I as to Defendants WMIP (the current holder of the '841 Patent) or Denson (the named inventor on the '841 Patent).

another and obtain a patent on that "invention."  *OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1401-02 (Fed. Cir. 1997).   In addition, a patent is invalid if all of the true inventors are not named on the patent.  *Trovan, Ltd. v. Sokymat,* S.A., 299 F.3d 1292, 1301 (Fed. Cir. 2002) ("A patent is invalid if more or fewer than the true inventors are named.").

However, pursuant to 35 U.S.C. § 256, invalidity can be avoided if it is shown that the failure to name an inventor was done without deceptive intent by the missing inventor.  *Chou v. University of Chicago,* 254 F.3d 1347, 1357-1358 (Fed. Cir. 2001).  Specifically, § 256 states as follows:

> **(a)** Correction.  Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.
>
> **(b)** Patent valid if error corrected.  The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section.  The court before which such matter is called in question may order correction of the patent on notice *and hearing of all parties concerned* and the Director shall issue a certificate accordingly.

35 U.S.C. § 256 (emphasis added).  Section 256 thus "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." *Fina Oil & Chemical Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997).

Section 256 was intended by Congress to be interpreted "broadly" as a "savings provision." *Chou,* 254 F.3d at 1358.  In addition, with respect to who is a "concerned party", the Federal Circuit Court of Appeals stated in *Chou*:

> The validity of a patent requires that the inventors be correctly named [citation omitted]…It follows that *parties with an economic stake in a patent's validity* are entitled to be heard on inventorship issues once a putative inventor has sued to

> correct inventorship [citation omitted]…Moreover, *we have cited with approval authority in which such parties have been subject to §256 actions, <u>even over their objection</u>… We therefore conclude that parties with an economic stake in a patent's validity may be subject to a § 256 suit.*

*Id.*, 254 F.3d at 1359 (emphasis added).  Accordingly, once a putative inventor sues to correct inventorship, all parties with *an economic stake* in a patent's validity are entitled to be heard and are subject to suit under § 256 —even over their objection.  *Chou*, at 1359 (citing *MCV Inc. v. King-Seeley Thermos Co.,* 870 F.2d 1568, 1570, (Fed. Cir. 1989) ("The statute [§ 256] prescribes only one prerequisite to judicial action: all parties must be given notice and an opportunity to be heard.").  Based on this reasoning, in *Chou* the Court allowed a § 256 claim to proceed against not only the third-parties to whom the patent was assigned, but also the university which employed the putative inventor and the co-inventor professor who secretly filed the disputed patent without the putative inventor's knowledge.  *Chou*, 254 F.3d at 1353-54; *see also Hook v. Hook & Ackerman, Inc.,* 187 F.2d 52, 59, n.7 (3d Cir. 1951) ("Patentees who have parted with all ownership by assignment are not indispensable parties…although they may be necessary parties *who should be made parties if that can be done without depriving the court of jurisdiction.*") (emphasis added).

Here, the FAC alleges multiple facts which "raise a reasonable expectation that discovery will reveal evidence" sufficient to show that both WMI and WMNS are proper parties to the § 256 claim.  First, as related companies to the current holder of the '841 Patent, both WMI and WMNS certainly stand to gain or lose some economic stake if the inventorship of the '841 Patent is changed.  Indeed, if Denson is determined to not be the true inventor, and if the ownership of the '841 Patent is thereby changed, a potentially highly valuable asset owned by one of WMI's wholly owned subsidiaries could be lost or at least severely compromised as to it.  A reasonable

8

inference from this is that WMI therefore does have an economic stake in the outcome of the inventorship question.

Second, the FAC specifically alleges that WMNS derived "and continues to derive, substantial economic and non-economic benefits, including reputational benefits, from the '841 Patent." (D.I. 22, ¶ 96). Plaintiffs also specifically request that the defendants, including WMNS, be required to "disgorge to Plaintiffs all ill-gotten economic benefits they have received from ['the '841 Patent]." (D.I. 22, Prayer for Relief, No. 4). Other courts have held such a claim to be sufficient to assert a § 256 claim against a party that has assigned away its rights to a patent. *See Jardin v. Datallegro, Inc.,* No. 10-CV-2552-IEG (WVG), 2011 U.S. Dist. LEXIS 84509, 2011 WL 3300152, *7 (S.D. Cal. July 29, 2011) (refusing to dismiss a § 256 claim against a party who had assigned his rights under the disputed patent on grounds that the plaintiff had requested relief related to the profits the party reaped when he sold and assigned the patent). In addition, if the inventorship and ownership of the '841Patent is changed, WMNS's unfettered ability to use the '841 Patent would be affected. Indeed, the very fact that WMNS has thus far refused to assent to Marco Doda's request to be named as an inventor on the '841 Patent evidences its economic interest in the inventorship question.

Third, as alleged in the FAC, WMNS directly participated in the fraudulent activity that has given rise to the inventorship question in the first place. (D.I. 22, ¶ 75, 96). It also has used and disclosed the confidential information in the '843 Patent Application and has derived, and continues to derive, substantial economic and non-economic benefits from that information, including reputational benefits from the '841 patent. (D.I. 22, ¶ 75, 96). These factual assertions, at a minimum, make it "facially plausible" that it has "an economic stake in a patent's validity."

In their brief, while implicitly admitting they have some stake in the '841 Patent, WMI and WMNS nevertheless argue that they are not proper parties because that "stake" is not "direct", or "concrete", and that *Chou* somehow imposes such a requirement.  (D.I. 27, at 6).  However, in its decision with respect to the question of which defendants would be subject to suit under § 256, the court in *Chou* did not impose any such "direct or concrete" requirement.  Instead, it simply found that "[e]ach of the defendants in this case has *an economic stake* in the validity of the patents involved and hence in the correct inventorship designations on the patents."  *Chou*, 254 F.3d at 1359 (emphasis added).

Not surprisingly, other courts have imposed no such "direct or concrete" requirement, at least in the context of co-inventors.  *See Schwindt v. Hologic, Inc.*, C.A. No. 11-110-JMS, 2011 U.S. Dist. LEXIS 84509, 2011 WL 3806511 (S.D. Ind. Aug. 26, 2011) (allowing a § 256 claim against the co-inventor assignee of the subject patent, the assignee's purchaser, and two of the named inventors on grounds that "it would be absurd to suggest that the notice requirement built into § 256 means that if two inventors conspire to keep a third inventor's name from a patent, and the two inventors assign the patent to a third party, the non-named inventor cannot add the two inventors in a § 256 [lawsuit].");  *Jardin,* at 6 (finding no authority for the proposition that, "to be named as a defendant in an action under § 256, a listed inventor must face any liability beyond the potential diminution of his attribution of inventorship.").  As such, Defendants' motion to dismiss WMI and WMNS from Count I should be denied.[3]

---

[3]  Defendants further argue that WMI should be dismissed from Count I (and, in fact, the case in its entirety) on grounds that, as the parent company it is "not liable for the acts of its subsidiaries."  (D.I. 27, at 5).  However, this argument misses the point.  The issue is not whether WMI is liable for the acts of WMIP, but rather whether WMI has an economic stake in the validity of the '841 Patent.  Of course, if WMI truly does not wish to participate in the defense of the inventorship of the '841 Patent, it is free to stipulate that Marco Doda should, in fact, be identified as a co-inventor on the '841 Patent.  *See Jardin at* *6 (finding that an inventor in a

**B.    Defendants' Motion to Dismiss Counts IV and V Pursuant to Rule 12(b)(1) or, in the Alternative, 12(b)(6), Should be Denied.**

1.    **Legal Standard for a Motion to Dismiss under Rule 12(b)(1).**

The Declaratory Judgment Act "requires an actual controversy between the parties before a federal court may exercise jurisdiction."  28 U.S.C. § 2201(a) (2000); *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 2004) (overruled in part on other grounds, *MedImmune*, 549 U.S. 118).  Plaintiffs bear the burden of proving the existence of an actual controversy by a preponderance of the evidence with regard to their declaratory judgment complaint.  *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992).  Following the Supreme Court's decision in *MedImmune*, the Federal Circuit has acknowledged that the "reasonable apprehension of suit test is no longer a necessary criterion for declaratory judgment jurisdiction." *Micron Tech., Inc. v. Mosaid Tech., Inc.*, 518 F.3d 897, 2008 U.S. App. LEXIS 4387, 2008 WL 540182, at *4 (Fed. Cir., Feb. 29, 2008).[4]  Instead, jurisdiction over a declaratory judgment now simply requires that "the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests and that it be real and substantial and admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127.

---

§ 256 case who had previously assigned all his rights in the subject-patent to another, could obtain dismissal if he "concede[d] the issue.")  Short of that, WMI is a proper party should remain as a defendant in Count I.

[4]  Prior to the Supreme Court's ruling in *MedImmune,* an actual controversy existed when there was both "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity."  *Gen-Probe, Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1380 (Fed. Cir. 2004) (quoting *BP Chems. Ltd. v. Union Carbide Corp*., 4 F.3d 975, 978 (Fed. Cir. 1993).

2.      **A Real Controversy Exists between the Parties Sufficient to Establish Jurisdiction for Purposes of the Declaratory Judgment Act.**

The FAC alleges sufficient facts to establish a basis for the assertion of subject-matter jurisdiction over Count IV (invalidation based on derivation) and Count V (unenforceability based on inequitable conduct).  Specifically, the FAC alleges:

- Beginning in 2009, representatives of DODA Italy and DODA USA and WMNS engaged in discussions regarding a business relationship between the parties whereby WMNS would purchase waste separator equipment and systems which were designed, planned, manufactured and serviced by DODA.  (D.I. 22, ¶ 17).

- In November 2009, representatives of WMNS and WMI, including Denson, traveled to Italy to meet in person with Marco Doda and other representatives of DODA, during which time he visited an operating food separation and bio gas plant designed by DODA utilizing the DODA equipment, and discussed the installation of the first DODA system into a Waste Management facility.  (D.I. 22, ¶ 19).

- In late 2009 and early 2010, DODA began providing information, initial drawings, and specifications for a site-specific DODA system, including detailed notes regarding the specific application of DODA's existing equipment, systems, designs, processes, and methods, which would be installed in WMNS's Orange County facility.  (D.I. 22, ¶ 21).

- In February, 2010, DODA sent Denson diagrams which set out in detail DODA's proprietary equipment and processes.  (D.I. 22, ¶ 23).

- In December, 2010 and April, 2012, WMNS entered into NDAs with DODA pursuant to which WMNS agreed not to disclose the confidential or proprietary technical and business information disclosed to it by DODA, and further agreed that "**the right to patent the technology arising therefrom, shall belong exclusively to the disclosing Party.**"  (D.I. 22, ¶ 32, 66).

- On June 27, 2011, unbeknownst to DODA and without listing Marco Doda as a co-inventor, Denson and WMNS filed the '843 Patent Application, which contained and incorporated confidential and proprietary information developed and provided by DODA on a confidential basis, including diagrams provided by DODA to Denson and WMNS.  (D.I. 22, ¶ 54).

- In the '841 Patent, which resulted from the '843 Patent Application, at least one of the claims—Claim 16—is derived directly from the information and diagrams provided by DODA and Marco Doda in 2009 through 2012.  (D.I. 22, ¶ 82).

- Upon learning of the '841 Patent and examining its contents, DODA promptly demanded that WMNS amend the '841 Patent to include Marco Doda as a co-inventor.  (D.I. 22, ¶ 87).

- The parties, through counsel, exchanged in extensive discussions aimed at resolving the issues between them with respect to the '841 Patent, and on February 9, 2017 entered into a tolling agreement in which they mutually agreed to toll their respective rights to assert claims related to, among other things, the '841 Patent and the non-disclosure agreements.  (D.I. 22, ¶ 87-93).

- Ultimately, despite four (4) months of negotiations the parties were unsuccessful in their attempts to reach an agreement resolving the disputed inventorship or ownership of the '841 Patent.  (D.I. 22, ¶ 97).

- DODA has sold and continues to sell organic waste processing systems that incorporate virtually every element in claim 16 of the '841 Patent.  (D.I. 22, ¶ 98).

Despite these specific, factual allegations, Defendants claim that subject matter is lacking as to Counts IV and V because any determination by this Court with respect to the invalidity and /or enforceability of the '841 Patent "could be nothing more than an improper advisory opinion." (D.I. 27, at 9).  This is simply incorrect.

As the above-outlined facts show, the FAC outlines a "definite and concrete" dispute between the parties regarding the ownership and inventorship of the '841 Patent.  Further, the allegations show that the dispute "touches on the legal relations of parties having adverse legal interests [and is] … real and substantial."  It involves two NDAs, one of which specifically addresses the rights of the parties to patent the technology being developed, which NDA the Plaintiffs claim was breached by one of the Defendants.  In addition, the facts alleged show the parties have engaged in months of negotiations in an attempt to resolve their differences with respect to the '842 Patent, even going so far as to enter into a mutual tolling agreement,[5] and

---

[5]   In an unusual twist, Defendants claim that the tolling agreement actually supports their argument that there is no "actual and justiciable controversy" between the parties.  However, the tolling agreement was a *mutual* agreement—both sides agreed to toll their respective claims

have been unable reach such an agreement.  Finally, the Plaintiffs have alleged that they have

sold, and continue to sell, an organic waste processing system that incorporates virtually every

element in one of the claims in the '841 Patent.  Under these alleged facts, there is no question

that the FAC meets the *MedImmune* requirements for establishing a "case or controversy" with

respect to the validity and enforceability of the '841 Patent.

   3. **Count IV of Plaintiffs' FAC Satisfies Fed. R. Civ. P. 8(a)(2) and States a Valid Claim for Relief.**

   In order to invalidate a patent pursuant to 35 U.S.C. § 102(f) based on derivation, the

party challenging the patent must show that the claimed subject matter was conceived by

someone else and there was communication of that conception to the party that patented it.

*Apotex Inc. v. Cephalon, Inc.*, 2011 U.S. Dist. LEXIS 125859, at *18 (E.D. Pa. 2011) (citing

*MacMillan v. Moffett*, 432 F.2d 1237, 1239, 58 C.C.P.A. 792 (C.C.P.A. 1970); 35 U.S.C.

§ 102(f).[6]  A patent invalidity claim "[does] not need to include detailed factual allegations" to

meet the pleading requirements of Rule 8 and *Iqbal/Twombly*.  *EMC Corp. v. Zerto, Inc.,* C.A.

No. 12-956-GMS, 2014 WL 3809365 at *2 (D. Del. July 31, 2014); *Ashcroft v. Iqbal*, 556 U.S.

662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Rather, it is sufficient if the

pleading "provide[s] notice of what particular type of claims of invalidity are at issue, [and] also

bolster[s] those allegations with at least enough 'supporting factual allegations' to render the

claims plausible."  *Idenix Pharms., 2014 WL 4222902 at *7 (quoting EMC,* 2014 WL 3809365 at

*2).  Plaintiffs' FAC clearly meets this standard.

---

against the other.  As such, if anything the tolling agreement bolsters the argument that there was
a "definite and concrete" dispute between the parties regarding the '841 Patent.

[6] 35 U.S.C. § 102 was substantially amended by the Leahy-Smith America Invents Act
("AIA"), enacted September 16, 2011.  *See* Pub. L. No. 112-29, 125 Stat. 284 (2011).  However,
because '843 applications was filed before March 16, 2013, the pre-AIA § 102(f) applies.  *See
U.S. Water Servs., Inc. v. Novozymes A/S*, 843 F.3d 1345, 1350 n.5 (Fed. Cir. 2016).

First, with respect to providing notice of the particular type of claims of invalidity are at issue, the FAC plainly states that the Plaintiffs' invalidity claim is based on a derivation theory. As set forth in paragraphs 132 and 133 of the FAC:

132.   Specifically, as outlined above, some or all of the inventions claimed in the '843 Patent Application and the '841 Patent were conceived by Marco Doda and communicated to Denson, who then deliberately and wrongfully incorporated them into the '843 Patent Application and the '841 Patent, all without ever notifying DODA or Marco Doda, or identifying Marco Doda as a co-inventor.

133.   Plaintiffs are entitled to a declaration that one or more claims of the '841 Patent are invalid on *grounds of derivation* and on grounds that the inventor listed on the '843 Patent Application and the '841 Patent did not actually invent the claimed invention.

D.I. 22, ¶¶ 132-133 (emphasis added).

Second, with respect to the "supporting factual allegations," the FAC specifically alleges that Plaintiffs' derivation claims relate to Claim 16 of the '841 Patent:  "Denson *derived Claim 16* from the information and diagrams provided by DODA and Marco Doda in 2009 through 2012, as outlined above."  (D.I. 22, ¶ 82) (emphasis added).  The FAC then goes on to outline in detail the multiple communications and contacts between the parties, including highlighting the drawings and information provided to the defendants.  *See, e.g.*, D.I. 22, ¶¶ 19–24, 52, 61–62.  In addition, in Paragraph 23 of the FAC, Plaintiffs specifically describe the information provided to Denson in one of the diagrams:

23.   The February 11 Diagrams set out in detail DODA's proprietary equipment and processes, and specifically diagramed an organic waste processing system that, among other things, featured (i) a hopper configured to receive sorted organic waste having contaminants from one or more sources; (ii) a separator system in communication with the hopper and configured to receive the sorted organic waste from the hopper; (iii) a wash water liquid tank in communication with the separator system and containing wash water; (iv) a product tank in communication with the separator system and configured to receive the sorted organic waste from the separator system, which has been processed by the separator system; and (v) a make-up product tank in communication with the

separator system and configured to receive the sorted organic waste from the separator system.

(D.I. 22, ¶ 23).  This description of the February 11 Diagram is virtually identical to Claim 16 in the '841 Patent.  (D.I. 22, ¶ 81).  Moreover, contrary to the assertions of the Defendants, the fact that it does not match Claim 16 word-for-word does not mean that it fails a Rule 8 analysis.  For one thing, the allegation itself states that it is not meant to be a "word-for-word" description of what is in the diagram, but merely a general description—hence the phrase "among other things."

As the Third Circuit Court of Appeals has noted, the Supreme Court in *Twombly* reaffirmed that Rule 8, at its heart, "'requires only a <u>short and plain</u> statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" and that this standard does not require "detailed factual allegations." *Phillips,* 515 F.3d 224 at 231 (*quoting Twombly,* 550 U.S. at 554) (emphasis added).  The FAC is 146 paragraphs and 30 pages long.  Any rational reading of the FAC, and in particular paragraph 23, shows that it gives the Defendants "fair notice of what the claim is and the grounds upon which it rests."[7]

In addition, Claim 16 is an "apparatus" claim relating to the organic waste "processing system" being patented.   The allegations in paragraph 23 of the FAC show that the communications to Denson and the other Defendants contained the "complete conception" of the apparatus claimed in Claim 16.  On their face,  the allegations in the FAC are clearly sufficient to render the derivation claim plausible.   Plaintiffs have therefore stated a valid claim for

---

[7]  To the extent Defendants believe they have not been provided with such fair notice, and at the risk of violating Rule 8's requirement of a "<u>short and plain statement</u>" of the facts, Plaintiffs are certainly willing to amend paragraph 23 to incorporate the language Defendants claim is missing, given that the February 11 Diagrams clearly support the claim.

invalidation based on derivation and Defendants' motion to dismiss Count IV of the FAC should be denied.

 **C.**   **The Parties Have Stipulated that Defendants' Motion to Dismiss Counts I and V with Respect to the Pending Child Application Should Be Dismissed without Prejudice or Costs.**

 The parties have stipulated that Counts I and V may be dismissed without prejudice, but only to the extent those Counts seek correction of inventorship, or declare unenforceable, the '021 Application.  (D.I. 29).  The Parties further stipulate that this dismissal is without an award of costs to either party, and without waiver by any party of any other argument, claim or defense relative to Counts I and V of the Amended Complaint, and specifically without any waiver by any party of any other argument, claim or defense relative to the inventorship, ownership, enforceability or validity of the '841 Patent or the '843 Application.

## V.   CONCLUSION.

 For the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendants' motions to dismiss in their entirety.

Dated:  August 28, 2017      MORRIS JAMES LLP

             * /s/ Brett D. Fallon*
             Brett D. Fallon (DE Bar No. 2480)
             Mary B. Matterer (DE Bar No. 2696)
             500 Delaware Avenue, Suite 1500
             Wilmington, DE  19801-1494
             Telephone:  (302) 888-6800
             *bfallon@morrisjames.com*
             *mmatterer@morrisjames.com*

- and -

Donald Chance Mark, Jr. (Minn. Bar #67659)
Patrick J. Rooney (Minn. Bar #198274)
Tyler P. Brimmer (Minn. Bar #0392700)
FAFINSKI MARK & JOHNSON, P.A.
Flagship Corporate Center
775 Prairie Center Drive, Suite 400
Eden Prairie, MN  55344
Telephone:  (952) 995-9500
*donald.mark@fmjlaw.com*
*patrick.rooney@fmjlaw.com*
*tyler.brimmer@fmjlaw.com*

***Attorneys for Plaintiffs Marco Doda,***
***DODA USA, Inc., and***
***DODA Costruzione Macchine Agricole,***
***di Doda Aldo e C. snc***