IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARCO DODA, DODA USA, INC. and DODA COSTRUZIONE MACCHINE AGRICOLE, DI DODA ALDO E C. SNC,<br><br>Plaintiffs,<br><br>v.<br><br>WASTE MANAGEMENT, INC., WM INTELLECTUAL PROPERTY HOLDINGS, LLC, WASTE MANAGEMENT NATIONAL SERVICES, INC. and JAMES L. DENSON, JR.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 17-604 (GMS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

                                                                                                          MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                                                                                          Karen Jacobs (#2881)
                                                                                                          Megan E. Dellinger (#5739)
                                                                                                          1201 North Market Street
                                                                                                          P.O. Box 1347
                                                                                                          Wilmington, DE 19899-1347
                                                                                                          (302) 658-9200
                                                                                                          kjacobs@mnat.com
                                                                                                          mdellinger@mnat.com
                                                                                                            *Attorneys for Waste Management, Inc.,
                                                                                                            WM Intellectual Property Holdings, LLC,
                                                                                                            Waste Management National Services, Inc., and
                                                                                                            James L. Denson, Jr.*

OF COUNSEL:

David M. Stein
H. Josh Ji
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
Costa Mesa, CA 92626

September 12, 2017

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ........................................................................................................1

II.    ARGUMENT ................................................................................................................3

        A.    WMI Should Be Dismissed from the Case .............................................3

        B.    Plaintiffs Have Not Shown WMNS Is a Concerned Party .....................7

        C.    Plaintiffs Cannot Establish Declaratory Judgment Jurisdiction for Counts IV or V ........................................................................................7

        D.    Plaintiffs' Count IV Allegations Do Not Satisfy Rule 12(b)(6) ..............9

III.    CONCLUSION ...........................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Chou v. Univ. of Chicago*,
   254 F.3d 1347 (Fed. Cir. 2001) ................................................................................4, 5

*Creative Compounds, LLC v. Starmark Labs.*,
   651 F.3d 1303 (Fed. Cir. 2011) ....................................................................................9

*EMC Corp. v. Zerto, Inc.*,
   C.A. No. 12-956-GMS, 2014 WL 3809365 (D. Del. July 31, 2014) ...................7, 10

*FFOC Co. v. Invent A.G.*,
   882 F. Supp. 642 (E.D. Mich. 1994) .............................................................................5

*Hedgewick v. Akers*,
   497 F.2d 905 (C.C.P.A. 1974) ....................................................................................10

*Hook v. Hook & Ackerman, Inc.*,
   187 F.2d 52 (3d Cir. 1951) ............................................................................................5

*Jardin v. DATAllegro, Inc.*,
   No.10-CV-2552-IEG(WVG), 2011 WL 3300152 (S.D. Cal. July 29, 2011) .........4, 6

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ......................................................................................................8

*Robert Bosch LLC v. Trico Prods. Corp.*,
   Case No. 12-c-437, 2013 WL 11316920 (N.D. Ill. July 24, 2013) ....................3–4, 6

*Schwindt v. Hologic, Inc.*,
   No. 1:11-cv-00110-JMS-MJD, 2011 WL 3806511 (S.D. Ind. Aug. 26, 2011) .....4, 5–6

*Senju Pharm. Co. v. Apotex, Inc.*,
   921 F. Supp. 2d 297 (D. Del. 2013) ...........................................................................10

**Rules and Statutes**

35 U.S.C. § 256 ................................................................................................... *passim*

Fed. R. Civ. P. 8(a)(2) .................................................................................................9

Fed. R. Civ. P. 12(b)(6) ..........................................................................................9, 10

**I.     INTRODUCTION**

Plaintiffs cannot sustain the challenged causes of action against the challenged parties. With respect to Count I (patent inventorship), the sole count against WMI, Plaintiffs' request to keep WMI in the case ignores both that WMI is a separate corporate entity with no interest in the patent, and case law holding that an ultimate parent is not liable for the acts of its subsidiary. WMI is merely a holding company and the ultimate parent; it does not own any right, title, or interest in, or derive an economic benefit from, the '841 Patent. Nor could any relief be granted against WMI. Plaintiffs do not even try to refute any of this.

Instead, Plaintiffs ask the Court to disregard the well-established law regarding corporate formalities and find that a "concerned party" under 35 U.S.C. § 256 is any entity that could possibly derive any benefit from a related entity's ownership of patented technology, no matter how speculative, indirect, or intangible the purported benefits. This interpretation of "concerned party" is so broad as to render the statutory language limitless and meaningless. It also would undermine corporate structure, making parent companies (and perhaps many subsidiaries) proper defendants in every inventorship case. Plaintiffs misapply the cases they cite, and at least one court has rejected the same arguments Plaintiffs advance here, distinguishing those same cases, and dismissing the ultimate parent on similar facts.

Plaintiffs' allegations against WMNS fare no better. WMNS does not have any rights in the '841 Patent either. That WMNS may be a proper defendant for the breach of contract claims (agreements WMNS signed) does not convert it into a proper defendant for a patent inventorship claim. Plaintiffs have not provided any basis for why WMNS is a proper party to the inventorship dispute, and so dismissal of both WMI and WMNS from Count I is warranted.

With respect to Counts IV & V (declaratory relief for patent invalidity and unenforceability, respectively), Plaintiffs fail to establish any basis for declaratory judgment

jurisdiction. Plaintiffs recite numerous allegations involving their breach of contract and inventorship claims and then argue that these disputes confer jurisdiction for purposes of patent invalidity/unenforceability. But Plaintiffs miss the point: under *Medimmune*, the touchstone for declaratory jurisdiction of patent invalidity/unenforceability is a live dispute that would be resolved by a declaration that the patent is invalid/unenforceable. Here, there simply is none. Plaintiffs do not allege any threat of infringement, and they concede there would be no reasonable apprehension of one by alleging they are selling a system that has "virtually" every aspect of the patent claims. D.I. 30 at 13–14. These allegations preclude any concrete patent dispute that would confer declaratory jurisdiction over these two counts.

Count IV also should be dismissed on *Twombly* grounds because the Amended Complaint still fails to state any facts that would support its allegation that "[t]he '841 Patent is invalid for failure to meet the conditions of patentability specified in 35 U.S.C. §§ 101, 102 and/or 103, failure to comply with the requirements of 35 U.S.C. §§ 112, 115, 116, 256, and other applicable statutory provisions." D.I. 22 ¶ 131. Plaintiffs simply ignore that they have alleged invalidity under a laundry list of statutory sections (and any other applicable statutory provisions not explicitly included in the list), and instead repeat their inventorship dispute allegations from Count I. Because the Amended Complaint alleges no facts whatsoever that would support a plausible claim under any other of the cited sections of the Patent Act, Count IV should also be dismissed for failure to state a claim.

Defendants' motion to dismiss should be granted, and this case should proceed only on the remaining counts against the particular parties not challenged here: Count I for patent inventorship against WMIP (the owner of the patent) and Denson (the named inventor), and Counts II & III for breach of contract against WMNS, the signatory to those agreements.

## II. ARGUMENT

### A. WMI Should Be Dismissed from the Case

Plaintiffs do not dispute that WMI does not have any right, title, or interest in the '841 Patent. Plaintiffs also do not address the case law Defendants cited in their Opening Brief regarding separate corporate entities and the notion that a parent company like WMI is not responsible for the actions of its subsidiary. D.I. 27 at 5–6. Plaintiffs simply ignore corporate structure and distinctions between corporate entities. This, alone, provides sufficient grounds to dismiss WMI from Count I, which appears to be named solely in its capacity as a parent entity.

Nor do Plaintiffs dispute that there is no relief that can be afforded against WMI. They also provide no explanation why complete relief cannot be granted against WMIP and Denson, or why WMI—a holding company—is needed for this count. Indeed, noticeably absent from the Opposition is any explanation of why they are trying so hard to keep WMI in this case.

Plaintiffs' entire argument for keeping WMI in the case hinges on their assertion that WMI is a "concerned party" under Section 256 because WMI somehow has an economic stake in the '841 Patent as the "sole owner" of WMIP, which currently owns the '841 Patent (D.I. 30 at 2), and because WMI is a "related" company to WMIP (*id.* at 8), which somehow necessarily "stands to lose if inventorship and ownership of the '841 Patent is changed." *Id.* at 2; *see also id.* at 8 ("[a]s related companies to the current holder of the '841 Patent, both WMI and WMNS certainly stand to gain or lose some economic stake if the inventorship of the '841 Patent is changed."). Even overlooking the speculative nature of these allegations, Plaintiffs' reasoning would eviscerate the bedrock principles of corporate structure and also would make untold numbers of persons or entities proper parties to a Section 256 challenge. Neither the statute nor any of the cases Plaintiffs cite justify this result.

In *Robert Bosch LLC v. Trico Products Corp.*, Case No. 12-c-437, 2013 WL 11316920

(N.D. Ill. July 24, 2013), involving similar facts, the court dismissed the ultimate parent from an inventorship dispute because, although it was a material witness, it did not have any economic or noneconomic interest in the patents. *Id*. at \*3. The same is true of WMI here.

None of the cases Plaintiffs cite support their attempt to name a parent holding company based solely on its corporate relationship to a subsidiary. Indeed, the *Bosch* court analyzed the same arguments and same cases Plaintiffs cite here, and then dismissed the parent entity because it was not a concerned party under Section 256, stating:

> We think that *Schwindt's* reasoning is sound, but it is distinguishable. The objecting defendants in *Schwindt* were the named inventors, who necessarily had a stake in the outcome of the plaintiff's § 256 claim. *See, e.g.*, *Jardin*, 2011 WL 3300152, \*8 (concluding that the named inventor was a proper party to the plaintiff's § 256 suit even though he no longer had an economic interest in the patent). [The ultimate parent] is a material witness, but currently it does not appear to have any interest (economic or noneconomic) in the patents.

*Id.* at \*3 (granting motion to dismiss parent entity).

In *Chou v. University of Chicago*, 254 F.3d 1347 (Fed. Cir. 2001), the court permitted a Section 256 case to proceed against the named inventor and the university that employed the putative inventor. Unlike WMI, the university in *Chou* had a contractual relationship with the putative inventor established by the administrative policies of the university. *Id*. at 1357. Under the University's Patent Statute incorporated therein, the putative inventor was obligated to assign her inventions to the University. *Id*. Because the university "owns the [patents at issue] and derives royalty income therefrom," the *Chou* court determined the university had an economic stake in the validity of the patents at issue. *Id.* at 1359. All other defendants in the action owned or "similarly [derived] . . . royalty income and stock benefits from those patents" (*i.e.*, "25% of the gross royalties and up-front payments from licensing of the patents, as well as 25% of the stock of new companies that are based on their inventions") and thus had an economic stake in the validity of the patents at issue. *Id*. at 1353, 1359–60. Thus, in *Chou*, each of the defendants

either owned the patents, held licenses to the patents, derived royalties from the patents, or received some other type of benefit directly from the patents.  *Id.* at 1359-60.  That is not the case here because WMI has no privity with the named inventor, putative inventor, or patent at issue and does not stand to receive any direct economic benefit from the '841 Patent.  *See also* D.I. 27 at 6 (distinguishing *Chou* on several grounds).

WMI's sole involvement with the '841 Patent is the six days (between January 8 and January 14, 2015) it held the patent.  Plaintiffs appear to cite *Hook v. Hook & Ackerman, Inc.*, 187 F.2d 52, 59 n.7 (3d Cir. 1951), as authority for their argument that patentees who have assigned all of their rights to a patent "may be necessary parties who should be made parties" if possible.  D.I. 30 at 8.  Other courts that have examined the 1951 *Hook* opinion more recently have cited it for a contrary position: "When a patentee has assigned his entire interest to a third party assignee, the patentee is, at most, a proper party."  *See, e.g.*, *FFOC Co. v. Invent A.G.*, 882 F. Supp. 642, 657 (E.D. Mich. 1994) (refusing to join inventors of patent at issue as "necessary parties" where inventors had assigned their interests in the patent, and finding the inventors "are not indispensable parties under Rule 19(b) where they have assigned their entire interest in the patent to a third party").  Thus, Plaintiffs' argument that WMI should be kept in this action because it owned the patent for six days, two and a half years ago, is not supported.

Nor is *Schwindt v. Hologic, Inc.*, No. 1:11-cv-00110-JMS-MJD, 2011 WL 3806511 (S.D. Ind. Aug. 26, 2011) (D.I. 30 at 10) to the contrary.  In *Schwindt*, the Court determined that the two named inventors could not avoid a dispute with a third inventor by transferring their interests into a shell company they still controlled, and then claiming they no longer had an "economic interest" under Section 256 after the transfer.  2011 WL 3806511, at *6.  This case does not apply here, where Plaintiffs are seeking to add the ultimate parent entity, which is not under the

- 5 -

named inventor's control, and which is not a mere shell entity created to hold the economic interest formerly held by the named inventor or to protect the proper party from liability.

Plaintiffs also rely on *Jardin v. DATAllegro, Inc.*, No.10-CV-2552-IEG(WVG), 2011 WL 3300152 (S.D. Cal. July 29, 2011), but that case, too, involved whether the named inventors (not corporate entities) could be defendants under Section 256.  2011 WL 3300152, at *6–9. Moreover, *Jardin* again involved the assignment of the patent by the inventor-defendant to a company.  The Court permitted the plaintiffs to include the inventor-defendant as a party to be held liable for the benefits he received from the assignment, *i.e.*, payments received from transferring the patent, which is not the scenario here.  Neither *Schwindt* nor *Jardin* involved the issue of whether a parent holding company (or even a related subsidiary) were proper defendants, and so those cases do not apply.

Unlike the defendants in the cases Plaintiffs cite, WMI is merely a parent holding company.  Plaintiffs do not allege WMI was ever named as an inventor on the '841 Patent, that WMI received royalties or profits from the '841 Patent, or that it had any contractual relationship with the putative inventor or the named inventor.  WMI cannot grant any of Plaintiffs' requested relief; nor would its involvement in this action be necessary for discovery of relevant evidence.

When presented with this issue, the court in *Bosch* examined *Chou*, *Schwindt*, and *Jardin*, and distinguished them all for these same reasons (*i.e.*, that they involved whether other inventors were proper defendants—not related corporate entities), and dismissed the ultimate parent.  2013 WL 11316920, at *3–4.  Under the same reasoning, WMI should be dismissed.

Finally, Plaintiffs argue WMI's mere defense of itself after being sued confirms WMI has an economic stake under Section 256.  D.I. 30 at 10 n.3 ("If WMI truly does not wish to participate in the defense of the inventorship of the '841Patent, it is free to stipulate that Marco

- 6 -

Doda should, in fact, be identified as a co-inventor on the '841 Patent."). This argument proves too much. Congressional intent in passing Section 256 could not have been that any entity that does not acquiesce to a plaintiff's demands becomes a concerned party. Nor does it make any sense to conclude that because Plaintiffs sued the wrong party, Marco Doda somehow meets the requirements under U.S. patent law to be named as an inventor. The cases make clear that a concerned party is one who has a direct, concrete economic benefit from the challenged patent. WMI is not a concerned party, and there is no basis to keep WMI in this case.

### B. Plaintiffs Have Not Shown WMNS Is a Concerned Party

Plaintiffs' allegations against WMNS fare no better. With regard to WMNS, Plaintiffs state that "[s]imilarly, the FAC alleges that WMNS derived, and continues to derive, substantial economic and non-economic benefits, including reputational benefits, from the '841 Patent." D.I. 30 at 2. And "[b]ased on these factual allegations," Plaintiffs contend, "it clearly is 'facially plausible' that both WMI and WMNS have an economic stake in the validity of the '841 Patent sufficient to make them both proper parties." *Id*. Such "bare-bones legal conclusions devoid of any supporting factual allegations" cannot overcome a motion to dismiss. *EMC Corp. v. Zerto, Inc.*, C.A. No. 12-956-GMS, 2014 WL 3809365 at *2 (D. Del. July 31, 2014). For the same reasons as with WMI, these allegations do not give rise to a basis to name WMNS in Count I.

Plaintiffs again argue that WMNS's mere defense of itself confirms its economic stake in the patent's validity for purposes of Section 256. D.I. 30 at 9. This, again, goes too far and would provide an exception that would swallow the rule for any defendant that tries to defend itself when incorrectly named in a patent inventorship claim.

### C. Plaintiffs Cannot Establish Declaratory Judgment Jurisdiction for Counts IV or V

The parties agree that declaratory judgment jurisdiction requires a "definite and concrete

[dispute], touching on the legal relations of parties having adverse legal interests and that [is] real and substantial and admit[s] of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted); *see also* D.I. 30 at 3.

There is no such dispute between the parties here, as Plaintiffs apparently concede. Plaintiffs' own characterization of the "Disputed Issues" in a Tolling Agreement the parties recently signed does not mention any threats of infringement suits or concerns that Plaintiffs would be prevented from selling their products that could potentially support a declaratory judgment suit for invalidity of the '841 Patent. *See* D.I. 27 at 9 & D.I. 16, Ex. 1.

Plaintiffs instead recite allegations relating to their breach of contract and inventorship claims and argue that these alleged disputes, somehow, create declaratory judgment jurisdiction regarding patent validity/enforceability. D.I. 30 at 12–14. Plaintiffs' characterization of the Tolling Agreement demonstrates their misunderstanding regarding the requirement of a case or controversy to support declaratory judgment counts for invalidity/unenforceability of the '841 Patent. D.I. 30 at 13 n.5. Plaintiffs ignore that they must establish a dispute that would be resolved by a finding that the patent is invalid/unenforceable—that is, Plaintiffs must have suffered or be threatened with some injury fairly traceable to the validity/enforceability of the '841 Patent. A prototypical example of a real and justiciable controversy is the threat of an infringement suit, which Plaintiffs here have not alleged. *See* D.I. 27 at 7–8. The Tolling Agreement, which crystallizes the parties' disputes, confirms there is no threat of an infringement suit. *See* D.I. 16, Ex. 1. Plaintiffs try to muddle the disputes between the parties regarding the inventorship and breach of contract claims to somehow conjure up declaratory

- 8 -

jurisdiction for separate counts of its Complaint—that is, Plaintiffs argue that the existence of *some* dispute between the parties supports declaratory judgment jurisdiction no matter the issue. That there is *a dispute* with respect to *other issues* does not create declaratory jurisdiction for patent invalidity and unenforceability claims.

Indeed, Plaintiffs confirm the lack of a case or controversy in their Opposition, stating: "Plaintiffs have alleged that they have sold, and continue to sell, an organic waste processing system that incorporates *virtually* every element in one of the claims in the '841 Patent." D.I. 30 at 14 (emphasis added). Plaintiffs—having full knowledge of their own systems and the '841 Patent—do not allege any reasonable apprehension of an infringement action, which would require Plaintiffs to use every element of the '841 Patent, not "virtually" every element. Plaintiffs also do not dispute that Defendants have never accused Plaintiffs of infringement or done anything to reasonably cause them to believe they will. Accordingly, there is no declaratory judgment jurisdiction. *See Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1316–17 (Fed. Cir. 2011) (finding no jurisdiction for an invalidity counterclaim where the patent holder had never accused the counterclaimant of infringing its patent, although patent holder sent notice letters to others in the industry). The requested invalidity and unenforceability determinations would, therefore, be improper advisory opinions.

### D.   Plaintiffs' Count IV Allegations Do Not Satisfy Rule 12(b)(6)

Even if the Court were to find subject matter jurisdiction over Count IV, Count IV should be dismissed for failure to satisfy Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

Plaintiffs do not plead the required factual basis for their allegations that the '841 Patent is invalid for failure to meet the conditions of patentability specified in 35 U.S.C. §§ 101, 102, 103, and 112. D.I. 22 at ¶ 131. A mere formulaic recitation of bare legal conclusions cannot

overcome a motion to dismiss. *See Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 300 (D. Del. 2013) (dismissing counterclaims that averred that the asserted claims "are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including, but not limited to Sections 101, 102, 103 and/or 112" as insufficient under the *Twombly* and *Iqbal* pleading standard); *see also EMC Corp.*, 2014 WL 3809365, at *2 (same).

Plaintiffs claim that, given the length of the Amended Complaint, "[a]ny rational reading" would give Defendants "fair notice of what the claim is and the grounds upon which it rests." D.I. 30 at 16. But no reading of the Amended Complaint reveals why Plaintiffs say the '841 Patent is drawn to patent-ineligible subject matter under Section 101, whether there are prior art references that would render the claimed invention anticipated and/or obvious under Sections 102 and 103, or how the '841 Patent lacks a written description or fails to enable one of ordinary skill in the art to make use of the full scope of the patent under Section 112.

Even for the derivation allegations, Plaintiffs again provide their vitriolic narrative, but they fail to allege the required communication of a "complete conception" of the enabled invention. *See Hedgewick v. Akers*, 497 F.2d 905, 908 (C.C.P.A. 1974). If Plaintiffs in fact provided a complete and enabling disclosure of the invention, they should have pleaded those details. Because they did not do so, and did not satisfy the *Twombly* pleading requirements, Count IV should be dismissed pursuant to Rule 12(b)(6).

### III. CONCLUSION

Defendants respectfully ask the Court to dismiss Count I against WMI and WMNS, because they are not "concerned parties" under Section 256, and there is no basis to keep them in the case. Defendants also ask the Court to dismiss Counts IV and V in their entirety because Plaintiffs have not shown there is a live case or controversy relating to these counts, nor do the pleadings satisfy the *Twombly* requirements for Count IV.

                                        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                        */s/ Megan E. Dellinger*

                                        Karen Jacobs (#2881)
                                        Megan E. Dellinger (#5739)
                                        1201 North Market Street
                                        P.O. Box 1347
                                        Wilmington, DE 19899-1347
                                        (302) 658-9200
                                        kjacobs@mnat.com
                                        mdellinger@mnat.com
                                            *Attorneys for Waste Management, Inc.,*
                                            *WM Intellectual Property Holdings, LLC,*
                                            *Waste Management National Services, Inc.,*
                                            *and James L. Denson, Jr.*

OF COUNSEL:

David M. Stein
H. Josh Ji
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
Costa Mesa, CA 92626

September 12, 2017
11273627.10

- 11 -

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 12, 2017, upon the following in the manner indicated:

| | |
|---|---|
| Brett D. Fallon, Esquire<br>Mary B. Matterer, Esquire<br>MORRIS JAMES LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801-1494<br>*Attorneys for Plaintiffs Marco Doda, DODA USA, Inc., and DODA Costruzione Macchine Agricole, di Doda Aldo e C. snc* | VIA ELECTRONIC MAIL |
| Donald Chance Mark, Jr.<br>Patrick J. Rooney<br>Tyler P. Brimmer<br>FAFINSKI MARK & JOHNSON, P.A.<br>Flagship Corporate Center<br>775 Prairie Center Drive, Suite 400<br>Eden Prairie, MN 55344<br>*Attorneys for Plaintiffs Marco Doda, DODA USA, Inc., and DODA Costruzione Macchine Agricole, di Doda Aldo e C. snc* | VIA ELECTRONIC MAIL |

/s/ *Megan E. Dellinger*
Megan E. Dellinger (#5739)